IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CARL SCHMIDT, III,           )
                             )
            Plaintiff,       )
                             )
    v.                       )
                             )   Civil Action No. 14-590
CAROLYN W. COLVIN,           )
ACTING COMMISSIONER OF       )
SOCIAL SECURITY,             )
                             )
            Defendant.       )

MEMORANDUM JUDGMENT ORDER

AND NOW, this 30th day of September, 2015, upon consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Acting Commissioner of Social Security ("Acting Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI, respectively, of the Social Security Act, IT IS ORDERED that the Acting Commissioner's motion for summary judgment (Document No. 11) be, and the same hereby is, granted and plaintiff's motion for summary judgment (Document No. 9) be, and the same hereby is, denied.

As the factfinder, an Administrative Law Judge ("ALJ") has an obligation to weigh all of the facts and evidence of record and may reject or discount any evidence if the ALJ explains the reasons for doing so. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Where the ALJ's findings of fact are supported by substantial evidence, a reviewing court is bound by those findings, even if it would have decided the factual inquiry differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). Moreover, it is well settled that disability is not determined merely by the

presence of impairments, but by the effect that those impairments have upon an individual's ability to perform substantial gainful activity. Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991). These well-established principles preclude a reversal or remand of the ALJ's decision here because the record contains substantial evidence to support the ALJ's findings and conclusions.

Plaintiff filed his applications for DIB and SSI on September 13, 2006, initially alleging disability beginning on September 1, 2004, but subsequently amended to September 25, 2006. Plaintiff's applications were denied. At plaintiff's request, an ALJ held a hearing and subsequently denied plaintiff's claim on July 23, 2008. Following denial of a request for review by the Appeals Council, plaintiff appealed to the United States District Court for the Western District of Pennsylvania at Civil Case No. 09-1281. On March 1, 2010, the Commissioner voluntarily remanded the case for further evaluation. Subsequently, on August 14, 2010, the Appeals Council vacated the July 2008 decision and directed the ALJ to re-evaluate certain evidence and obtain additional vocational expert testimony. The ALJ arranged for plaintiff to undergo consultative mental and physical examinations, and plaintiff also produced additional evidence for review.

On January 14, 2011, the ALJ held a second hearing, at which plaintiff appeared and testified while represented by counsel. On February 18, 2011, the ALJ issued a partially favorable decision, finding that plaintiff was disabled from September 25, 2006, to July 9, 2009, which entitled him to DIB and SSI payments for that period. However, the ALJ concluded that medical improvement related to plaintiff's ability to work occurred on July 10, 2009, and he was capable of performing substantial gainful activity from that date through the date of the ALJ's decision. Thus, the ALJ determined that plaintiff's disability ceased on July 10, 2009. The Appeals Council denied plaintiff's request for review on March 16, 2014, making the ALJ's decision the final decision of the Acting Commissioner. The instant action followed.

Plaintiff, who has a high school education, was 37 years old on his alleged onset date and 41 years old when the ALJ issued his decision, and is classified a younger individual under the regulations. 20 C.F.R. §§404.1563(c), 416.963(c). Plaintiff has past relevant work experience as a roofer, gas station attendant and asbestos worker, but he has not engaged in substantial gainful activity at any time since his alleged onset date.

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert at the hearing, the ALJ issued a partially favorable decision finding plaintiff disabled from September 25, 2006, to July 9, 2009 (the "disability period"). The ALJ first found that plaintiff suffers from the severe impairments of chronic back pain of the lumbar spine and right leg pain secondary to degenerative disc disease status-post lumbar fusion, degenerative disc disease of the cervical spine, arthritis of the hands and schizoaffective disorder; however, those impairments, alone or in combination, did not meet or equal the criteria of any of the listed impairments set forth in Appendix 1 of 20 C.F.R., Subpart P, Regulation No. 4 ("Appendix 1") during the disability period.

The ALJ next found that during the disability period, plaintiff retained the residual functional capacity to perform sedentary work with a sit/stand option. In addition, plaintiff was restricted from jobs that required a high degree of dexterity and repetitive use of the right dominant hand. Further, plaintiff was required to avoid exposure to temperature extremes, wetness and vibrations, as well as heights and moving machinery. Plaintiff also was limited to simple instructions and decision making and restricted from crowds, groups of people and close interaction with co-workers. Finally, plaintiff was unable to deal with normal work stress (collectively, the "First RFC Finding").

Based upon testimony by a vocational expert, the ALJ concluded that plaintiff was unable

to perform his past relevant work, or any other work that exists in significant numbers in the national economy, during the disability period because it exceeded his residual functional capacity.

However, the ALJ found that medical improvement related to plaintiff's ability to work occurred on July 10, 2009, and his disability ended on that date. More specifically, as of July 10, 2009, the ALJ found that plaintiff's residual functional capacity was the same as previously set forth in the First RFC Finding, except that plaintiff no longer required an accommodation for inability to deal with normal work stress (the "Revised RFC Finding"). Based on testimony by a vocational expert, the ALJ found that plaintiff still was unable to perform his past relevant work. However, when asked to consider plaintiff's vocational factors and the Revised RFC Finding, the vocational expert testified that plaintiff was capable of performing other work that exists in significant numbers in the national economy, such as a night security guard. Consequently, the ALJ found that plaintiff's disability ceased on July 10, 2009.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment that can be expected to last for a continuous period of at least twelve months.[1] 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§423(d)(2)(A), 1382c(a)(3)(B).

---

[1] The Social Security Regulations specify a five-step sequential evaluation process for determining whether a claimant is disabled. The ALJ must assess: (1) whether the claimant currently is engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether his impairment meets or equals the criteria listed in Appendix 1; (4) if not, whether the claimant's impairment prevents him from performing his past relevant work; and (5) if so, whether the claimant can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

If the claimant is found disabled at any step in the process, the ALJ also must determine if the disability continued through the date of his decision or ceased due to medical improvement. See 20 C.F.R. §§404.1594, 416.994. Medical improvement is defined as "any decrease in the medical severity of [a claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled. . . ." 20 C.F.R. §§404.1594(b)(1), 416.994(b)(1)(i). Medical improvement is determined by comparing prior and current medical evidence, which must show that there has been improvement in the symptoms, signs or laboratory findings associated with the impairment. Id.

To evaluate whether medical improvement has occurred, the ALJ must engage in an eight-step sequential evaluation process. See 20 C.F.R. §§404.1594(f)(1)-(f)(8), 416.994(b)(5)(i)-(b)(5)(viii). The process requires consideration of: (1) whether the claimant is engaging in substantial gainful activity; (2) whether the claimant has an impairment or combination of impairments that meets or equals a listing; (3) whether there has been medical improvement in the claimant's condition; (4) whether the medical improvement is related to the claimant's ability to work;[2] (5) whether any of the exceptions to medical improvement apply; (6) whether the claimant's current impairments in combination are severe; (7) whether the claimant has the current residual functional capacity to perform his past relevant work; and (8) if not, whether the claimant can perform any other work which exists in the national economy in light of his age, education, work experience and current residual functional capacity. Id.

In this case, the ALJ found that plaintiff experienced medical improvement related to his ability to work, and further found that in consideration of his vocational factors and current residual

---

[2]Medical improvement is related to a claimant's ability to work "if there has been a decrease in the severity . . . of the impairment(s) present at the time of the most recent favorable medical decision and an increase in [the claimant's] functional capacity to do basic work activities. . . ." 20 C.F.R. §§404.1594(b)(3), 416.994(b)(1)(iii).

functional capacity, he could perform other work which exists in the national economy, thus his disability ceased on July 10, 2009. Plaintiff disagrees with the ALJ's conclusion that his disability ended on that date. According to plaintiff, the ALJ erred by finding medical improvement related to his mental health condition such that he became capable of dealing with normal work stress. After reviewing the record in this case, the court finds that the ALJ's decision was supported by substantial evidence.

As explained, the Revised RFC Finding contained the same accommodations as the First RFC Finding, with the exception that the limitation for inability to deal with normal work stress was removed. Plaintiff argues that the ALJ's finding of medical improvement concerning plaintiff's mental health status and ability to deal with normal work stress is not supported by substantial evidence. Plaintiff bases his argument primarily on the opinion of Dr. Lawrence Haddad, who performed a one-time consultative examination on September 27, 2010, and found that plaintiff had an extreme limitation in his ability to respond appropriately to work pressures in the usual work setting. (R. 1116).

As the ALJ explained in his decision, he did not give full weight to Dr. Haddad's opinion because plaintiff's treatment records from Western Psychiatric Institute and Clinic ("WPIC") since July 10, 2009, do not substantiate Dr. Haddad's finding of such an extreme limitation. (R. 555-56). After reviewing the record, we find that the ALJ properly weighed Dr. Haddad's opinion because the treatment records from WPIC since July 10, 2009, consistently documented generally unremarkable mental status examinations and specifically indicated that plaintiff was compliant with his medications, presented himself appropriately, he sometimes exhibited a pleasant mood, he was able to communicate effectively, he was motivated and had fair to good insight and logical thoughts, and he consistently reported an ability to concentrate. (R. 834-35, 837-38, 840-41, 843,

846, 849-50, 966, 969-70, 974, 980-81, 984, 1173, 1176, 1179-80, 1182-83, 1185-86). The notes from plaintiff's treatment providers at WPIC since July 10, 2009, do not document findings which support the extreme limitation in ability to respond to work pressure assessed by Dr. Haddad. Rather, the records from WPIC show that plaintiff's overall mental health condition improved.

We find that the ALJ properly evaluated and weighed Dr. Haddad's opinion, and in consideration of plaintiff's treatment records from WPIC correctly concluded that plaintiff experienced medical improvement in his mental health, such that a limitation for inability to deal with work stress was no longer warranted. (R. 555-56, 562). After removing that limitation from the Revised RFC Finding, the ALJ properly relied on testimony by the vocational expert indicating that plaintiff's current residual functional capacity and vocational factors allowed him to perform other work that existed in the national economy as of July 10, 2009, thus his disability ceased on that date. (R. 564).

In conclusion, after carefully and methodically considering the medical evidence in this case, the ALJ properly determined that plaintiff experienced medical improvement related to his ability to work and was no longer disabled as of July 10, 2009. The ALJ's findings and conclusions are supported by substantial evidence and are not otherwise erroneous. Therefore, the decision of the Acting Commissioner must be affirmed.

/s/ Gustave Diamond
Gustave Diamond
United States District Judge

cc: Karl E. Osterhout, Esq.
521 Cedar Way
Suite 200
Oakmont, PA 15139

Paul Kovac
Assistant U.S. Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219